We're going to call our last case of this morning, Tucker v. Superintendent, number 15-2170. Good morning. May it please the Court? Good morning. I'm Ryan Dunlavey. I represent the Commonwealth Appellants in this matter. Your Honor, if I could just make three points. Hold on. Before that, are you reserving time? Yes, Your Honor. How many minutes, please? That's granted. Thank you. If I could just make three points quickly, Your Honor. The district court below overturned a 12-year-old murder conviction obtained in state court by the Commonwealth of Pennsylvania based on a parsimonious reading of the trial court's stated reasons for closing the courtroom and an equally parsimonious reading of the Superior Court's opinion upholding the closure on PCRA review. The Court also failed to consider the totality of the circumstances which is required under Strickland and in doing so, failed to notice that, in fact, contrary to its findings, the courtroom was not completely closed. This was not a full closure. This was a partial closure. But all the state courts treated it as a full closure, did they not? I think the PCRA court on PCRA review and the Superior Court, when they addressed the claim, assumed that the court was completely closed. The PCRA judge didn't address this because it wasn't brought up by the parties. Now, this is largely irrelevant to whether or not the court can overturn the state court judgment under 2254. It may be, but it does have an implication as to the application of Willer, does it not? I mean, Willer involved a full closure, as I understand it. Until a later case, it was unclear as to whether partial closure had the same standard, the overriding interest, or whether it was a substantial interest at that point. That's correct. And a number of circuit courts, even since Presley in the last few years, have concluded that, in fact, if Willer applies, it doesn't necessarily apply in the most stringent manner that other courts have applied it on direct review of complete closures. Okay. Can you shed any light on whether we should be applying Ed Poddeference at all to the underlying merits question that is on the application of Willer, the question of closure of courtroom? Or do we apply Ed Poddeference only to the sort of first layer of the state court's application of Strickland? I think in the application of deference goes to the result reached by the state court. Typically, the starting point for review of the state court decision is looking at the opinion and the stated reasons by the state court. But ultimately, it goes to the result, as one of the circuit courts has said, the state court can say that the result was dictated by tarot cards, and the result may well still be reasonable. But didn't the Supreme Court in Cullen and other cases basically point out, and I was a little surprised I didn't see this in your brief, maybe I missed it, but when you're applying Ed Poddeference and Strickland, Cullen said that's doubly deferential. I didn't really see any of that in your brief. You kind of separated a tree of one and then the other, as I think Judge Krause just said. Why are we doubly deferential in this case? I think the court should be doubly deferential to the state court's, the result reached by the state court. I think I addressed in our initial brief at least both Ed Poddeference and Deference to counsel, in part by pointing out that the district court misunderstood what constitutes clearly established federal law. But do you agree on the underlying question, that is the closure of the courtroom, that even the standard as articulated by the Pennsylvania courts is contrary to Waller?  Well, the state courts aren't even citing Waller, much less identifying the four prongs of Waller to apply them. Well, I think the Supreme Court has made it fairly clear in a number of cases over the past 15 years or so. In Ed Poddeference cases, the federal courts reviewing state court judgments have no authority to grant relief under 2254D based on the adequacy or perceived inadequacies of state court opinion. And the Superior Court clearly did identify the issue. It understood that this was a Sixth Amendment claim. It cited the Sixth Amendment. It had no obligation to cite chapter and verse of Waller v. Georgia. And ultimately, it did examine the record. And I know that Mr. Tucker disagrees, but the trial court did examine, did provide compelling interests in advancing the closure. It also did consider whether there were reasonable alternatives. But the Supreme Court in its case law, including most recently in Davis, has certainly made it, at the review, a high standard. But it hasn't said that it's meaningless. We are looking at whether the state court acted in a way that was contrary to or an unreasonable application of clearly established federal law. Where the state court articulates, and let's just focus now on the underlying merits question, because I understand when we're dealing with Strickland, there may be different elements we need to consider. But if we're looking at the underlying question about the propriety of closure of the courtroom, the test, the standard articulated by the state court citing to state case law, appears on its face to be in disregard of Waller. It is a fundamentally different and far more lenient test than the four-prong test articulated by Waller, isn't it? Again, I would disagree with that characterization of the state court opinion. I can understand initially, at first blush, why you would look at the state court opinion and say, you know, that doesn't look like Waller. And Mr. Tucker has pointed out that the state court used the phrase abusive discretion to explain what the standard of review is on it as to closure. But of course, that's something of a red herring, because the Supreme Court has in the past indicated the trial court does have discretion in closing the courtroom. It's just, you know, under Waller, there may be more stringent requirements in applying that as to the trial court's findings. And as I said, the Superior Court's opinion, it doesn't look like Waller. But the Superior Court is not, particularly in a non-presidential opinion, is not required to set forth the chapter and verse of Waller. Are you suggesting that the constant test incorporates the criteria and the analysis that is required by Waller? It would depend. Again, it depends on the facts of the case. This particular case, that the Superior Court cited the constant, to me it doesn't demonstrate that the result it reached certainly was unreasonable. This has an interesting, maybe it's not so interesting, procedural twist. The PCRA judge was Judge Hughes, who was the original trial court. Correct. Unlike the normal, the regular, I should say, case where a PCRA judge will review the record, she seemed to expand on her thoughts as the trial judge. How do we handle that? I think the expansion of her thoughts, as stated by Mr. Tucker, is vastly overstated. I think he points out that in her opinion, she says, well, there was a large group of men that came into the courtroom who were attempting to talk to Mr. Tucker, and Mr. Tucker was attempting to talk to them. That is an accurate description of what she observed at trial. At trial, she also noted there were many, many spectators in this courtroom. That would have been helpful at the trial court level. She's the PCRA judge. It's just a different procedural thing. How do we handle that? Do we defer to that in the first instance as if it happened at trial court? It's a finding of fact, which must be presumed correct. Is this a procedure that's followed a lot in state court? I know you appear there a lot. The procedure as to where the original trial judge would also act as a PCRA judge. Yes. That's the ordinary. Is that right? Okay. Mr. Newman, I'd like to go back to the question of constant because I'm quite surprised at your assertion that the standard that is being used in the Pennsylvania courts is the equivalent of or it could be sustained considering the test of Waller, that the constant test that seems to be applied repeatedly is that the right to a public trial may be restricted so long as the basic guarantees of fairness are preserved, such as by the presence of the press and the making of a record for later review. How does that test incorporate the requirement of an overriding interest to close the courtroom, a narrowly tailored one that's no broader than necessary, the sua sponte raising of alternatives, of narrower alternatives than a complete closure of the courtroom, and the requirement of specific findings being made on the record that would justify closure? I can see that it's not nearly as specific or pointed as Waller is, but it's also reflective of the test adopted by Waller. Waller adopted the test in first amendment closure cases in Press Enterprise I. Press Enterprise itself, interestingly enough, said in more limited closures, a partial closure, a record made available after the closure can be sufficient to protect the public right to be present at trial. Now, again, this is a non-presidential opinion by the Superior Court. It's not required to engage in an exhaustive recitation. And I think we all agree it need not even cite the Waller opinion, but nonetheless it appears to enunciate a standard that doesn't really seem consistent with Waller. In our view, the result is what matters, and the result is consistent with Waller. Now, even if the court could conclude that the state court's opinion is contrary to Waller, the next step, as this court pointed out in Branch v. Sweeney in 2014, if it concludes that the petitioner has overcome 2254B, the next step is to consider the claim de novo. And that means considering the Strickland claim de novo. And in the ordinary course is when you strongly presume that counsel had a reasonable basis for not raising this particular claim. And in this case, that presumption is virtually unchallengeable because counsel… Well, under Harrington, isn't… So the question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Right. Right? Right. Now, if I could get back to the point I was just stating, the… Well, let's stick with the presumption, the question of deficient performance here, because it seems like the presumption is necessarily overcome given what was actually argued here on direct appeal. Because we take from Smith v. Robbins that the presumption of effective assistance of counsel may be overcome where counsel ignores issues that are clearly stronger than those that were raised. What was raised here on direct appeal in six pages of arguments, the leading argument is sufficiency of the evidence, something that we recognized is certainly a difficult claim to make. Where counsel opted for that as the primary argument on appeal instead of the court closure claim that, given the standard applied by the Pennsylvania courts, seems to be problematic in terms of comporting with the Constitution on its face. Why isn't the presumption overcome even with the deference? Because we know so little about what counsel was thinking, what she knew, whether she had strategic considerations in mind when she was considering which claims to raise. Well, your colleague can explain why we don't have something like that in the record, and I hope we'll be hearing about that. But when we consider Smith v. Robbins, even putting aside that we don't have such a declaration or affidavit, why isn't the presumption overcome given the arguments that counsel did raise? Because I think Smith v. Robbins, it says that the presumption may be overcome if you can show that the claim that was not pursued is clearly stronger than the others. Whether that's clearly stronger or not depends in part on what counsel meant. And Smith v. Robbins, that standard doesn't mean that if the other claims that she raised weren't perfected, for instance. I mean, I know the Superior Court on Direct Appeal found several of the claims she raised waived. It doesn't mean that, in fact, the issue that was not pursued was actually meritorious. Let's go back to that question. I mean, your argument is the inapplicability of Waller seems to be that this was not a complete closure. Are you resting on the fact that the intern, presumably a member of the prosecution team, was allowed to remain? No, Your Honor. Was it the individual, the dear friend of the judge with the students, was allowed to remain? I think I'm resting on the fact that we know so little about the scope of the closure. And the individuals who could tell us how extensive the closure was, the judge, who's now retired, and counsel, who's now a judge, who presides over the Common Pleas Court just seven blocks away from this courthouse, have apparently never been contacted by a petitioner who bears the burden of proof at all stages on habeas. And again, this is a Strickland claim. Why can't we just take the record on its face? The trial judge said that she was clearing the courtroom and that all citizens were to be excluded. There's a question that's then asked later in the day about the two remaining individuals, and that is the intern and the detective. And even the detective, who is unlikely to have been a source of the communication with the defendant or disorder of conduct in the courtroom, has been excluded by the trial judge, leaving only the intern, who was associated with the prosecutor's office. Don't we know, given that, that this was a complete closure of the courtroom? No, we don't, Your Honor. Why not? How is that? Because, first of all, I think by no citizens, Judge Hughes was politely referring to the partisan spectators in the courtroom. And it's unclear what counsel's position was when she objected. You'll notice that she says, Your Honor, I know we discussed this off the record, but just note my objection. Now, what that objection was, we don't know. And did she actually, did the judge say, Hey, you know, I could limit this to these particular spectators. Did counsel say, No, no, no, no, that's not fair. And, in fact, counsel is the one that brought up the presence of the detective and the intern to the trial judge. And she insisted that they be excluded. But didn't the trial judge also, I mean, in fairness, when there was an objection lodged, didn't the trial judge basically cut off counsel and say, Don't worry about it, you're good, you don't have to lay it out? I mean, it seems that now we're faulting her for not doing so. And the trial judge, I mean, you've got to rely on what the trial judge said. You're good, it's not waived, you know, all that. I don't know if that's accurate. I think the waiver determination is made by the appellate court, ultimately. And, of course, the requirement for a contemporaneous objection, and a specific one, is for the appellate courts. Well, defense counsel sought to expound on the objection on the record, and the court interrupted and said, The only thing I want you to do about objections, and the record should be abundantly clear, no objections in this procedure are waived. All I'm asking either counsel to do is to stand up, object. I will rule unless the attorney absolutely needs to talk to me and the objection is preserved. The objection will be placed on the record outside the presence of the jury. I don't want a whole bunch of delays for the jury when the objection is through, say, it's possible the objection is relevant, et cetera. I expect counsel to exercise discretion, and to bring peace to both your minds. I've done this in homicides. I've done this in major cases. I've never been reversed on this protocol, until I say, No, you've waived that objection. As long as you stand up and say the objection, the objection is preserved. Under those circumstances, didn't counsel do what we would reasonably expect a diligent counselor to do to preserve the objection? Well, first of all, I think when you mentioned that she sought to expound on the objection, I think fairly readily what she's saying is, I want to explain why I need to put an objection on the record, because in other cases I've had problems with leaving things off the record. And in the end, we still don't know what the substance of the objection was. Was she objecting simply to closure generally? Was she objecting to an exclusion limited to the spectators who were there in support of the client? We don't know. Well, let's assume the objection is not waived. Can you speak to the merits of the Waller claim? Sure. I think Mr. Tucker, in his brief at one point, concedes that the court identified compelling interests in favor of closure. And they clearly were. I mean, the judge had to admonish Mr. Tucker, his father, and a large group of men who came into the court three times. And the disruptions didn't stop until the closure order. I think it would be reasonable for a judge in her position to say, you know what, further disruptions aren't going to help. And given the witness tampering that had gone on, the witness tampering was egregious in this case. Can you speak to the need for a complete closure and the consideration of alternatives? Yes. I think Fairley read what Judge Hughes said on the record, indicated that, in fact, she did consider alternatives. She just found that when she mentions the complexity of the relationships amongst those in the courtroom, she's saying, you know what, it's going to be way too hard for me to try to discriminate amongst Who's a threat to this witness? Who is helping Tucker send messages to these other witnesses? And contrary to what Mr. Tucker has said and what the district courts seem to believe, Tanisha Austin wasn't the only witness who was being intimidated. Where's the evidence of that in the record? There's evidence of testimony by a police officer who responded and arrested Mr. Tucker. Do you have a citation for that? Was that testimony known to the trial court before closure of the courtroom? No, it wasn't. But you can see, those facts, that evidence goes to the reasonableness of counsel's decision not to raise this claim. Because she knows that an appellate court looking at this claim is going to think, okay, well, maybe we can send this back to trial court explaining what occurred off the record. What did she mean by a large group of men, et cetera? Or they're going to look at the record and say, this guy, he had made efforts to intimidate one, two, three witnesses. All young women who had been there, just hours after the murder, he lingers near, he comes back to the scene, and according to the police officer who responded, her name escapes me, Naima Scott, the sister of the decedent, says, this guy came back, he was threatening me, that's him down there, that's his car right there. And immediately after that, the police apprehended him. Don't we expect a reasonably diligent counsel to focus on what's known to the trial court when counsel's making an assessment of the strength of a Waller claim? Sure, but I don't think that it's clearly established that the trial court couldn't look at everything else that was going on during trial and all the evidence that came out. But the courtroom was already closed at that point. It had already been closed for at least a day at that point. Well, there was a partial closure at that point. How is it a partial closure for an intern alone to be remaining, and the detective, as well as every other citizen in the room, to be excluded? Because we know that there's a lot of professors and students who were probably better prepared to observe and ensure that fairness was being observed by the judge.  Are you suggesting that makes it open in part to the public because the judge invited someone identified as a dear, dear friend? Yes. I think that it would be reasonable for the state court to conclude that, in fact, this wasn't a complete closure because you had the law professor and her students weren't there just to spend time with Judge Hughes. They were there to observe the trial. That's the purpose of their presence. Can you point to any case where court has defined the closure as partial, where the press and all citizens, other than an invited guest of a judge, were excluded? Just where the press was excluded. Admittedly, most of the cases in these partial closure cases have to do with jury selection. Closures for the testimony of particular witnesses. But, again, we don't know if there were reporters there. As I said before, I think when a judge says no citizen would be allowed to attend, she's politely referring to the partisan spectators there. And because of Mr. Tucker's positioning, we don't know who was there, who was actually excluded. And the fact that the law professor and her students were present suggests that maybe this closure wasn't enforced against all citizens. Tell me again your argument on the reasonable alternatives and the implication of Presley in this case and what was known to counsel at the time as to whether the judge had a responsibility sua sponte to consider it without being asked by defense counsel? Well, I want to point out that a royal argument before the district court, Mr. Tucker said that his claim was premised on Waller and not Presley because Presley doesn't apply retroactively. And while the Supreme Court's opinion in Presley suggests that, well, it's clear from our precedence that Waller requires sua sponte consideration of reasonable alternatives, that case stood in a different posture than it would in a habeas case where the court was saying, well, according to our holding there, there could be no fair-minded disagreement as to what we meant. And the dissent sets a number of circuit cases, and there were more beyond that, that held that, no, you know what? Waller doesn't require the judge to come up with these alternatives if the party opposing closure doesn't offer any. And again, in this case, it's not clear that counsel proposed any alternatives. And at the time, this is five years before Presley's decided, at the time she could have reasonably thought, you know what? I didn't offer any alternatives. There's no record of me doing that. I can't prevail on that particular component of Waller. Was defense counsel precluded from testifying in this case? I'm sorry? With base? Is she precluded from testifying? Well, I haven't researched that question in depth. I think ordinarily there's a problem with if the petitioner doesn't bother to proffer an affidavit from counsel in state court. There's state law to that effect that, you know, if you're not going to proffer an affidavit from counsel or even explain why you couldn't proffer one, then you don't get a hearing. And I think there's a reasonable argument to be made that he can't put her on to testify because he didn't act diligently enough in state court. But, you know, as I said, I haven't looked into that issue in depth. I can address it. You seem to be saying there's a failure of proof here on the part of the petitioner because there's no evidence from counsel who is now a judge. Right, and easily accessible to Mr. Tucker. I mean, there is no reason for not to have tried to proffer some information or an explanation from Judge McDermott. If you were able to maybe while your adversary is presenting, if you can find us a citation, maybe a testimony on further witness tampering, that would be great. Sure. Okay, thank you. Thank you. Counsel, before we start and we start to use up your time, what is the correct spelling of your client's first name? I think we got it wrong. It's T-E-R-R-A-N-C-E. Okay, I apologize. We have it as E-R-N-C-E. So we'll try to correct that. Thank you, Your Honor. May it please the Court, Tom Gaeta for F. Lee, Terrence Tucker. In this case, the Court violated Mr. Tucker's Sixth Amendment right to a public trial when it, in an abundance of caution, closed the courtroom to all citizens. His rights were further violated when, on direct appeal, his attorney, who was clearly aware of the issue, having objected to it at trial, failed to raise the issue. In this case, the closure of the courtroom bore very little resemblance to the four-prong analysis provided by Waller. In Waller, the Court requires primarily that the closure be no broader than necessary and, in fact, is necessary. Here, I think it's probably easiest if we limit the focus. We've got 14 witnesses, six police officers, five police officers, and one medical examiner. And so if we look at the third day of trial, in the third day of trial there's no indication that this professor was there. The Court's order that no citizen shall be present is in full effect. Yet, during the testimony of a police officer, the medical examiner, an attorney called by the defense, and several other defense witnesses, no citizens were permitted to be present. Now, in the bare facts provided by Judge Hughes, there's nothing to indicate that this police officer or medical examiner are at any risk of being tampered with. And I'd go further and say there's nothing to indicate that there was a reasonable likelihood that there would have been disruptions during that third day that couldn't have been surmounted by some other lesser means beyond closing the courtroom to all citizens. We're not dealing with a direct appeal of a Sixth Amendment claim. We're dealing with a deference of an effective assistance claim. I agree. And so focusing on that last day, I think it's clear that the Sixth Amendment right to a public trial was violated. Because that Sixth Amendment right was violated, counsel should have been on notice to raise the issue on direct appeal. On direct appeal, the Superior Court would have engaged in this analysis and would have presumably applied Waller and determined that the closure of the courtroom, setting aside whatever other arguments the Commonwealth may have made, the closure of the courtroom was inappropriate on that third day. Well, the state courts would and did apply Constant with a test and standard that seems rather different than Waller. Why isn't it reasonable for, and this goes to either deficiency or prejudice, but as counsel is contemplating and making strategic decisions about which claim to raise, knowing the state law that has been applied to these types of claims, why wasn't it reasonable for counsel to focus on other claims on direct appeal? Well, I think there's two issues. First, the Superior Court had previously applied Waller in Commonwealth v. Penn, which I believe we cited in one of the footnotes in our brief. They applied. It's an extensive discussion of the multi-factor analysis of Waller, and they ended up applying it in a way that we would take no issue with. So it's not so much that there was a given that the Superior Court would not apply Waller. That's the one case where it is applied Waller in a multitude of others. The state courts have applied Constant or a test like it, citing the state case law. Well, I agree. Clearly there was a possibility that the Superior Court would apply the incorrect law. We've seen that now in PCRA. They've applied it. However, I think it's incumbent upon counsel to assume that courts will behave legally and to attempt at least to preserve their clients' rights for further review in a court such as the Pennsylvania Supreme Court, which had never applied Constant, or to preserve for certiorari review this issue. Well, let's assume that's true. Then don't we still need to think as to what might have been in the mind of counsel at the time, and what reasonable choices might be made, as well as prejudice, in considering if counsel had in mind the application of the Waller factors and whether those were clearly met here given the state of the law at the time? Well, I think that they were clearly met here, and counsel should have been aware that they were clearly met here. And because they were clearly met here, counsel should have known that a Waller claim, even if the Superior Court would have been an unfavorable forum, would have been more likely to succeed than the sufficiency of the evidence claim or I think there was a claim of abuse of discretion at sentencing, which was unpreserved. Both of those claims were surefire losers. You don't dispute the first, the overriding interest, the overriding need for some type of closure? I think that the record here could easily support some action by the court to maintain control of a courtroom or to prevent possible witness tampering. So can you address the remaining factors then? Do you dispute the fourth, that is, whether the court made findings either sufficient in amount or in the form of findings to justify closure? We do dispute that. The findings the court made were sufficient to take some action, but not to completely close the court. The findings were insufficient to support the order the judge actually entered. Because of that, we think that the Waller violation is clear. So then can you address the scope and the reasonable alternatives consideration? As we've heard from Mr. Dunleavy, one couldn't take an inference from the things that the court said that it concluded that because of the difficulties in ascertaining who was causing the disruptions, the complexity of relationships among the individuals in the gallery, and the number of times that the judge tried unsuccessfully to bring order to the courtroom and to stop exchanges that were taking place, that the scope of this closure was needed, and that we can infer from that that the judge did consider, which is all that Waller on his face requires, reasonable alternatives. Well, I don't think we can infer that. I think, if I have the cite here, it was Press Enterprise 2, which requires that these findings be made on the record. Essentially everything having to do with this Waller analysis must be on the record. So if you need to make an inference in order to agree with what the court did, I think we've already prevailed. But regardless, I think that the scope here is not supported by the findings. And certainly there were other alternatives. The court could have cleared two rows behind the defendant or that side of the courtroom, or could have threatened some sort of sanction. There's a number of different alternatives that the court could have undertaken, and nothing in the findings indicate that those would have been unsuccessful in preventing these disruptions. Just moving, I guess, ahead to the Strickland claim, your adversary says there's testimony about the other witness tampering incidents. Can we consider that in terms of assessing counsel's failure to raise the Waller issue in the direct appeal? Again, as he said, knowing this and not wanting to get into it, she decided maybe this is a loser and I want to let this thing pass and just pick up other things in the argument. No, I don't think we should consider it. And I think this speaks to a point that you made earlier about the sort of odd procedural posture here. What we had was Judge Hughes sitting in PCRA and analyzing an ineffective assistance of appellate counsel argument. So the question was, on appeal, what would counsel have thought the superior court would do? And the superior court would have been limited to the record that was before Judge Hughes at the time she entered the order. So that subsequent information, while it might have supported some measure of closure for that other witness, wouldn't really have been part of the superior court's analysis of the Waller claim had it been raised on direct appeal. Moreover, even if there was some other indication of witness tampering, there's still these somewhat unimpeachable witnesses, the medical examiner, the police officers, who there's no indication on the record have ever been tampered with or that there was any danger of tampering with them. In fact, when Judge Hughes talked about the shifting relationships between the parties and the witnesses, she ignored that completely. There were some citizen witnesses who had familiar relationships with Mr. Tucker or with the victim, but there's no indication that any of these, I think it was Dr. Preston, the medical examiner, had no other contact with Mr. Tucker. There's nothing in the record to indicate that. The overriding interests that were identified by the trial court were not only concerns about witness intimidation. It was also order in the courtroom that the judge said was necessary for a fair trial. And without some assurance in those intervening couple of days that there was any change in the disruptive conduct that would follow from allowing the same individuals back in the courtroom, why wasn't it then reasonable for counsel to conclude that this claim was not a clear winner? Well, I think the record shows that Judge Hughes was not primarily concerned by that point in trial with disruptions. She did allow the public in during closing arguments, when presumably she would have also wanted to maintain order in the courtroom. Does that really answer Judge Krause's question, though? I think it does in that... I mean, are you just speculating? I mean, what is in the record that would show that everything was calm and the judge was perfectly content to open the courtroom or would be, wouldn't have to fear for any sort of disruption or disorder? Well, I think the question that Judge Krause posed was whether or not reasonable counsel on appeal would have thought that the Waller claim... I understand. And so I think that the record shows that when these individuals were allowed back into the courtroom, there were no further disruptions. The court was not concerned about disruptions at that point. Otherwise, presumably, Judge Hughes would not have allowed them back in. And over all of this... Isn't there a difference between witnesses testifying and lawyers making final argument at that time? I think that there is a difference. However, that speaks more to the witness tampering issue than the disruption in the courtroom. I don't think that a judge would be content with people in the Pinot Gallery disrupting the proceedings simply because... Well, how do we know? I am speculating here, but I think that that's a reasonable speculation. We're both speculating, but I don't see anything in the record to support your assertion. Well, what do we do with the fact we're left to speculate? Where you had the burden and we don't have a declaration or affidavit or something that might explain what was actually in counsel's mind and so we don't have to be speculating about these possibilities, what counsel is considering. Well, I think that the fact that we do have to speculate about what's in counsel's mind, first, is not entirely Mr. Kupfer's fault. He has sought an evidentiary hearing to present now Judge McDermott in the PCRA court, and that was not granted. Again, in the district court, in the alternative, we requested an evidentiary hearing at which we would have put on Judge McDermott. However... Where in the PCRA court did he request a hearing? I think it said JA-776. Petitioner intends to further explore and support this issue at the PCRA hearing, calling Ms. McDermott to testify. So the speculation here I don't think is that problematic for us, because no matter what we speculate, we end up with a strategy that is unreasonable if it results in omitting this claim. Was he presented at that point? No, he was represented by counsel. So, effectively, there was no reasonable strategy that could have supported the omission of this claim in favor of a sufficiency evidence claim. There was no... We would need to speculate to come up with some strategy. However, whatever we came up with would be unreasonable. So because of that, I think under Smith v. Robbins, we surmount that deference to possible strategy of counsel. But we might have gotten some facts as to at least what counsel observed. A lot of it is just unknown at this point. I agree that we might have gotten facts as to what counsel observed. However, the issue is what was on the record for this Waller claim on appeal to the Superior Court. And so even if counsel had observed things, that in her mind might have satisfied her that the closure was appropriate. But what about counsel considering Waller and whether there was a problem with the state court standard, whether counsel even contemplated raising a Waller claim as to the federal constitutional standard? If the PCRA court wasn't going to grant a hearing, why not at least get that in through a declaration or affidavit? We obviously weren't representing Mr. Tucker at the time, but I think it was unnecessary because if counsel didn't contemplate Waller or didn't recognize that the Supreme Court had binding authority in this area, that alone would be ineffective assistance of appellate counsel. But on the other hand, counsel might have contemplated Waller and have gone through each of these factors and concluded that it was a close case or close enough that it was a reasonable strategic decision to focus on other claims. Isn't that also a possibility? Well, our position is that no reasonable counsel looking at this record could have agreed that a Waller claim would have been a close call. Certainly no reasonable counsel could have looked at this claim and believed that a Waller claim would have had less likelihood to prevail than a sufficiency of the evidence claim or an unpreserved challenge to the length of Mr. Tucker's sentence. So is the answer here setting it back for a hearing to get counsel on record? I think an evidentiary hearing is unnecessary in this case because counsel could not have had a reasonable strategy. So while we could put counsel on the stand and determine what her strategy was, essentially anything she could tell the court would be an unreasonable strategy. Whether it was just she forgot or omitted or if she unreasonably thought that the Waller claim would not prevail, I think that we would end up back here in the same posture that we're in now. But she's the one person that would provide some factual evidence as to what took place. Well, she's not the only person that could provide factual evidence as to what took place in terms of the actual closure. She's the only one who could decide, who could inform us as to what happened on appeal. Well, it's a Strickland claim though, right? Don't we necessarily have to focus on counsel's performance? We absolutely do. But I think an evidentiary hearing is not required to grant on a Strickland claim. In fact, this court has found attorneys ineffective in the past without an evidentiary hearing. In Everett v. Beard, which is at 290 F. 3rd, 500, the court reversed the denial of a habeas petition on an ineffective assistance of counsel claim where trial counsel failed to object to clearly erroneous jury instructions. And this court found counsel ineffective clearly without holding an evidentiary hearing. The same has been true in the context of appellate ineffective assistance. In the 11th Circuit in Overstreet v. Warden at 811 F. 3rd, 1283, and in the 2nd Circuit in Lynch v. Dolce at 789 F. 3rd, 303, both cases involved appellate counsel's omission of a claim that clearly would have resulted in a reversal of the conviction. It seems to me that erroneous jury instructions is a different kind of inquiry than some of the questions we're dealing with here that we don't know the answer to. Well, I think in terms of prejudice, perhaps, but in terms of counsel's performance and counsel's strategy, it's still a question of what would reasonable counsel have done, and this court was able to determine on the basis of the record alone that no reasonable counsel would have failed to raise this issue. Even that phrasing, though, it sounds like a direct review type of phrasing. Again, we're dealing with epideference. That is, was the state court acting unreasonably or contrary to Strickland in its review of counsel's decision? So it's a difficult threshold to get over just there, and we don't have the assistance of a declaration, affidavit, testimony, something besides speculation. Well, you said it out of time, but I wanted to address Your Honor's question. What we have, because of the posture of this case, the superior court unreasonably determined the Strickland analysis because it applied the constant standard to the underlying Sixth Amendment claim. So we have an unreasonable application of clearly established federal law by the state courts, which means the federal courts should review the ineffective assistance of appellate counsel claim de novo. And on that de novo review, I think it's clear looking at this record that appellate counsel was ineffective in failing to raise the Sixth Amendment claim. Do we get to contrary to, even if we think that Strickland itself was properly, the test for Strickland was properly articulated by the state courts? It's a strange posture. So what we have is the state courts applied a standard that was contrary to Waller in applying Strickland. Therefore, the Strickland analysis itself involved an unreasonable application of clearly established law. So the Strickland analysis is unreasonable because it's predicated on the constant analysis, which in turn is contrary to law. It's sort of Matryoshka dolls of ineffectiveness. So it's a strange posture. But thank you, Your Honor. Thank you, counsel. Just a couple of points on rebuttal. Judge Chigurhs, who had asked for a citation, at 317 of the joint appendix, page 111 of the transcript from November 14, 2003, Officer Powers, who responded at the scene and assisted in the arrest of Mr. Tucker, says, let's see, where is this? When I arrived there at that property, and that property he's referring to Ann Mookie Williams' house where the murder occurred, she told me, he's referring to Mr. Scott's sister, that her brother was shot earlier that morning in the shooter, which she gave me the name of Terrence Tucker, was at that property minutes before I arrived, making verbal threats. And then he goes on to explain that she pointed the car out and then he went in pursuit of Mr. Tucker. How does that later acquired information, how is that relevant to assessing a trial court's decision to close the courtroom, much less counsel's decision whether or not to raise on appeal a question about the trial court's closure of the courtroom when that wasn't known to the trial court? Well, I think it's directly relevant to the reasonableness of counsel's assessment of the merits of this claim. I'm sorry? I think Judge Krause asked about the court. How is that relevant at all? It's sort of the horse is already out of the barn in a sense. The courtroom is already closed. Well, number one, we don't know that the courtroom is completely closed. Either partially or whatever. Number two, it supports the reasonableness of counsel. This is a strickland claim. And I can understand why Mr. Tucker focuses solely on Waller because his interpretation of Waller, which, by the way, they mention and rely on Press Enterprise, too, which is a First Amendment case. It's not Waller. It postdated Waller. And they also rely on the briefs on the United States v. Antwerp that they have to do that. They know they can't win under Waller. What the Superior Court did and the result it reached is consistent with Waller. Do you agree that let's assume for purposes of this question that we believe that the constant test that has been articulated and applied in the state court is incompatible with Waller? If that's the case, then do you agree that in looking at the ineffective assistance claim that the state court necessarily unreasonably applied strickland because part and parcel of that analysis was predicated on the application of constant so that as we consider the review of the ineffective assistance claim, we are looking at that de novo? If the focus of 2254D is on the adequacy of the state court opinion, which it is not, then I could agree that Waller was not applied by the Superior Court. But strickland, it doesn't. 2254D is ultimately focused on the result reached. And if this is a strickland claim and it wasn't from the Superior Court, then the Superior Court could have said a number of other things fully justifying rejection of this claim. But do we put epidefference to the side? Yes, epidefference absolutely still applies. Just I want to be clear. Your position is that if we conclude that in conducting its own strickland analysis that the state court assessed the merits of the claim and therefore deficiency of counsel's performance using incorrect law, that we nonetheless apply, we nonetheless say that epidefference applies to our review of the state court's ineffective assistance determination? Or at that point do we say it was an unreasonable application of strickland because it's premised on incorrect law that was used to assess the underlying merits, hence the deficiency, at least the deficiency prong, therefore we're reviewing de novo? I can understand the reasoning. If it's premised on an unreasonable application of the Sixth Amendment at a public trial rate jurisprudence, then I can understand why you conclude that it didn't apply strickland correctly. But what the Superior Court did when it rejected his strickland claim is it's concluding, okay, this underlying claim is meritless. That doesn't mean that the result that the court reached was unreasonable. Again, that's the focus of 2254D. And most courts, including this court, have reached that conclusion. And ultimately, even if, as I've said, even if the court concludes that the Superior Court's opinion is contrary to or an unreasonable application of constant or strickland, then we're still left with a strickland claim de novo. And I know Mr. Tucker keeps trying to use the absence of evidence in the record as to the scope of the closure and what counsel knew to support his claim, but you can't do that under strickland. Burt v. Tillow makes that crystal clear. It goes without saying that silence in the record does not rebut the strong presumption that counsel had a reasonable basis for her inaction or action, whichever the case may be. Okay. Thank you, counsel. We thank both counsel for excellent arguments and briefing here. We'll take the case under advisement. We'd also like to meet counsel at sidebar and ask Ms. Amato if she would adjourn court.